17-77 people get off. The. Mhm. Yeah. Yeah. Okay. Yeah. Mhm. Yeah. Mhm. Mhm. Mhm. Mhm. Mhm. Good boy. Morning. Introduce yourself, please. Johnson speaker for Marcus Austin. Assistant State's Attorney Marcy Jacobs representing the people of the state. Thank you. How much time do you wish? Okay. I assume you like to say. Mhm. A piece of court this morning. I plan to argue. Um, she won the instructional error. After a jury trial, my client was found guilty of three crimes, each of which alleged the use of a firearm. The defense and cross examination elicited testimony that the weapon held by the offender may not have been a firearm under the statute. When it came time to instruct the jury, the circuit court deferred to the state and withheld the full definition of a firearm. Incomplete definition given to the jury allowed jurors to convict my client based on the use of a BB or air power gun. The such guns do not fall within the firearm statute. So all the defendant needs to do in order to get this long form instruction that includes everything that's not a firearm is ask a witness. Uh, could this have been a starter pistol? Witness says, I don't know. Uh, I'll be a hypothetical. No, the instruction given would be fine because a starter pistol does not shoot a projectile. It has gas, but it doesn't protect a lot. So a starter pistol would be one situation where giving a short instruction would be sufficient. Um, but if the question was in this case of a pellet gun or a BB gun, that is a gun which does use gas to shoot a projectile. And in that case, if a witness was, um, was unsure whether a gun that was fired with gunpowder or with air, then yes, there's a long form instruction, as you say, should be given. So witnesses, when you're asking them about a weapon that's pointed at them, and a defense counsel says, uh, do you know whether this weapon that was pointed at you shoots a projectile or, uh, propels by, propels a BB by air? No idea. You get that long form instruction. Well, I mean, I think in general, if there's testimony it was a gun, there can be an assumption that what they're talking about is a gun, gun that shoots with gunpowder. If the matter is looked at, it doesn't fall within any of the provisions listed in Section 1.1. Um, and the witness does say, yes, it could have been a gun that meets those criteria. But yes, the instruction should be given in full. But here, what evidence was there that, uh, what type of BB gun, are all BB guns exempted? It depends on the size of the projectile. Okay. So not all BB guns are exempt. But how do we know that this BB gun was within the exemption or not? Well, the state doesn't, isn't required to come in to, to bring in a gun and prove that it shoots, um, shoots a bullet which has gunpowder. No, you're using this as a defense. I mean, your defense is that this was a BB gun. Right? And you want this instruction. But the instruction, the exemption is only of a certain size, uh, a smaller size of, uh, of, uh, I am and so forth. There is no, uh, testimony or evidence whatsoever as to any of that. Well, those are, those are BB guns. It also covers, um, pneumatic guns and spring guns, which are types of, um, pellet guns. And it's not clear to me, based on the statute, that the restriction on the size of the projectile applies to that. It appears that the paintball gun and the BB gun, uh, have the limitation on the size of it. No, wait, wait, wait. Uh, your, your argument, uh, doesn't really fly because BB gun is the last word, it's before, which expels and then, then limits it. So, if there's anything, the argument would be that it doesn't apply to spring guns or paintball guns, but at least it applies to BB guns. Well, the pellet guns are spring guns and, and pneumatic guns. But you said this is a pellet gun. So, I mean, we're not talking about pellet guns here. Uh, yes, we are. I mean, I, I pointed to the BB gun, but the argument is that all air-powered guns, and the testimony of Takiya Stephenson, what they, as true, and she had the gun in her hand, was that she didn't know whether it was a rear gun or a pellet gun. Even the pellet guns, pellet guns typically can shoot BBs. Not so much vice versa, although apparently some BB guns can, um, shoot pellets. So, we're talking about, they're all air guns in a broad sense. And Takiya Stephenson's testimony was that she couldn't tell the difference between a rear gun and a pellet gun. And Kenyanya's testimony was similar. He couldn't tell the difference between a toy gun and a pellet gun. I went up at the, the, at trial, there was no question that a firearm instruction needed to be given. Um, the state realizes this. They requested us to include instructions of vehicular hijacking and simple robbery. Um, and they agreed that the firearm instruction needed to be given. The only question was whether the full instruction needed to be given or the incomplete instruction, in our view, that was, in fact, given to the jury. And that incomplete instruction misstated the law. Uh, BB, pellet, and other air guns, uh, do meet the definition that was given to the jury, but that isn't the, the definition of firearm. That isn't the complete definition. Without the language proposed by the defense, the jury wouldn't know that. Um, in their brief, the state doesn't directly dispute the fact that this was a misleading instruction as it was given. The jury's supposed to give a full, accurate account of the law. In this case, they weren't. Now, this issue is fully preserved, so the question is whether the state can show harmless error. And in this case, the state, uh, hasn't met its burden. In the opening brief, we cited cases finding instructional error not to be harmless. The instruction dealt with an important issue where there was conflicting issue, uh, there was conflicting evidence on an issue, excuse me. And in this case, um, the issue was important. Uh, this was the difference between a class X charge and a class 1 or a class 2 charge on the, uh, robbery and vehicular hijacking. And it was also disputed. This was the main subject of the closing argument. Um, the defense got up there and said, we don't know. They didn't present the gun. Could have been a pellet gun. It could have been a BB gun. And, um, the state disputed that. Uh, given the significance of the, uh, trial, we would ask this court, uh, to reverse Mr. Austin's convictions and remand him for a new trial. Thank you. Thank you. Good morning, Your Honors. Marcy Jacobs, Assistant State's Attorney. Um, in no way did the people concede that the instructions here, uh, here is given were misleading. We argued on page 21 of our brief that, um, that the instructions, uh, that the proctor did not abuse its discretion and that if he gave misleading instructions, that would have been an abusive discretion. But let me be perfectly clear that based on this record, with what this jury heard, there can be no question that they were not confused or misled that a toy gun or a pellet gun or a BB gun was not something, uh, meant something qualitatively different than an actual firearm. And this is because they heard the cross-examination by defense counsel of the state witnesses trying to undermine their testimony, um, that they saw a defendant with a real, actual gun. And this is because they heard the closing argument. Almost the entire closing argument is that the state did not prove the difference between a firearm and something, uh, a toy gun. And they were given lesser included instructions, armed robbery for armed robbery, vehicular hijacking for aggregated vehicular hijacking. Um, and, and they heard the state's attorney's argument, uh, about the, uh, about how you wouldn't hide it if it was a toy gun. You wouldn't bother to hide it. So based on everything that went on in this trial, there's no question that it's, um, an unreasonable interpretation of this record to think that this jury would have mistaken the idea that, uh, that if he, he, that he could have been convicted, um, that a BB gun was not something very different than, um, uh, a toy, than, uh, an actual real firearm. Uh, you do argue forfeiture and, uh, say that, uh, the defendant's argument on appeal is different than the argument he presented in the trial court. Could you articulate that? I sure can. I mean, I do believe we did, um, the trial court in this case did give the general firearm instruction, which it's not even required to do. It's not even, uh, the IPI does not require that he give that instruction, um, under either of these, um, uh, offenses. Um, and there's no authority whatsoever that the bracket, bracketed material within that instruction ever was meant to include, as you stated, the, the long form, all four paragraphs. What it says is, if, if appropriate, fill in the bracket, meaning if there's evidence that this gun was, and it was some, one of these exceptions, if there's actual evidence, affirmative evidence, that this gun was something other than, um, one of the exceptions, and that one exception should be put in the bracketed material. And the defense attorney at trial never asked for that. He asked for all forms. He said, he literally said, um, his, uh, his ask was, um, they, without the exceptions, the jury can confuse a CO2 gun, um, it's not accepted, a replica gun, a starting gun. That was the defense attorney at trial. Now we have here an appeal that, um, that, uh, defendant is arguing that, oh, you know, it was a BB gun, there was evidence that it was a BB gun, and I would like to, uh, uh, uh, uh, submit to this case that there was no evidence whatsoever that, that the defendant wielded a BB gun in this case. Um, I mean, while three police officers with all their experience and knowledge of firearms testified unequivocally that what they saw was an actual gun, and with one lay witness who did have experience with guns, and, um, I will have to point out that, um, defense counsel misrepresented her testimony. She did not say when she felt the gun, she didn't know whether it was a, a real gun, and she felt that gun against her head, it felt like steel, and she absolutely thought it was a real gun, and it wasn't until cross-examination where she was asked, um, have you ever shot a pellet gun, and she said she did not know if she shot a pellet gun, not that she did not know if, if what she felt was a pellet gun, and she said she did not know the, uh, difference between types of guns, but she was adamant that she knew about guns. Um, and while Anthony Younger's testimony, the other lay witness who was not particularly cooperative, did testify, well, on cross-examination, okay, it could have been a pellet gun, I would suggest to this court that that is not actual evidence of a gun, that it's not affirmative evidence, that it's nothing more than a mere insinuation or speculation, you know, it, it may, it may serve to reduce the strength of the state's evidence that it was a gun, but it's not affirmative evidence in and of itself that rises to the level of slight evidence where this instruction would be given, but to your point, um, uh, Justice Mason about the forfeiture, so that's the point, when the trial court said, no, I'm not giving you the four paragraphs, he never, the defense counsel never came back and said, well, can we just have BB gun, because we think, what they're arguing now is that that was the most hottest disputed issue in the, in the trial court, no, it wasn't, um, he didn't, he didn't even ask for it, if it was such a hotly disputed issue, I would submit that he would have then said, well, can I at least just have BB gun, since that's the hot, the hot issue here, so, um, I don't think that this was even some evidence under the, um, under the new McDonald's standard, the McDonald's standard, and I would like to point you to that case, because I think it's instructive here, um, that, um, there was a witness in that case that gave a similar comment to the witness here, to the witness here, that there was, it could have been a toy gun, um, the defendant in that case was wanting a, uh, an instruction on mutual combat second degree, and the witness there testified, well, the victim probably hit the defendant first, or maybe had started the whole thing, so I think those comments are pretty equivalent to could have been a toy gun, or we had one witness make that comment, and, um, the McDonald's, the trial court in that case looked at everything, looked at the whole thing in context, and found that that didn't even rise to the level of slight evidence, the Illinois Supreme Court did not find an abuse of discretion, um, and I would suggest that, um, this court compare those comments and see that there was no evidence to, uh, to justify giving this instruction, so the trial court did not abuse its discretion, um, even if he did not forfeit the issue, um, it's a mere comment like in Bracho, it's just a mere factual reference, so, um, we would, uh, with all of the strong evidence in this case that it was an actual firearm, with the three officers testifying and the lay witness testifying that they knew guns and this was an actual firearm, plus the use of the firearm, pointing it at the witness's head, and pointing it at, uh, at an officer who was firing, you know, bullets at him, um, it, it, there's evidence that this was an actual firearm was strong, there was no evidence that it was anything but, so even if this instruction should have been given, which we don't concede by any stretch, it would not have changed the outcome of the case, and we ask that you affirm defendant's conviction. Thank you. Just two points, um, with regard to forfeiture, same issue is raised in the trial court that is being raised now, which is that the argument that was given was confusing to the jury, now... Well, the state's point though is, you asked for the sun, the moon, the stars, all four subsections, any, any possible kind of, uh, uh, weapon that isn't a firearm, when now on appeal you're saying, well, it really was just this one. I know that, I don't believe that the argument is that it was confusing because there was too many other instances of a firearm that were given, and in general, um, if it lists a bunch of factors, and some of them were obviously not applicable, it wasn't an antique gun, there was no testimony that there was a musket out there or that it was an industrial bargaining machine, um, just because there were additional ones that didn't apply it, let's take the instruction that was given, which was misleading, which didn't include it, and the other one, which is the, um, extensive version of law, you would go with the one that gives the correct, um, law, however verbose it is, um, and in this case, the, they did ask for the full instruction, including a PP gun and included air guns in addition to these other guns, and there's no requirement that, um, uh, the counsel give one that is, uh, tailor-made, the question is whether the instruction states the law, and the instruction that the defense requested, um, stated the law, the full law, and the one that was in fact given to the jury did not, and that's what was misleading. Now, with regard to, um, whether affirmative evidence, uh, is needed for, to give an instruction, when I went down to the standings where there was some evidence, and there was some evidence, I would ask your honors to look at the people, people versus right case, where there was a much more evidence that someone felt a gun, I believe against their back, they had a hand over, there was multiple witnesses, in this case, there was express testimony that the witnesses could not, the two witnesses could not tell the difference between, you've got the victim Stevenson saying there was the barrel of a gun against my head, I felt it, and I know guns, I've shot them before, and you've got the police officer saying I saw him with a weapon that looked just like my service revolver, so, this isn't a reasonable doubt, they're asking for an instruction, the question is whether there was some evidence, whether, um, I mean, the question is whether the instruction itself was accurate, but with regard to the gun there. That goes back to my original question, so all, all defense counsel has to do on cross-examination is say, you don't know whether the metal weapon that was placed against your head uses a spring mechanism or a projectile mechanism. Whether it shoots bullets or whether it shoots pellets, say. Right, that's all you have to do, and the witness is going to say, it's a gun, it's a gun, I don't know, I don't know how it operates, but it's a gun, and so you get that then long form instruction in every case. Yes, Your Honor, if, I mean, there might be, uh, yes, Your Honor, this is, I have a series of instructions here, and, and, I mean, if the issue is whether there was, if the issue is whether, if, if an element of the crime is that there was a firearm, the State needs to prove that there was a firearm, and if there's someone up there saying, maybe this wasn't a firearm under the statute, then yes, the issue should be taken to the jury as to whether it was a firearm or not. But you're, what, what you've got is a question on cross-examination that says, you don't know the mechanism this object placed against your head used to fire whatever it fires, whether it's a pellet or a bullet. You don't know that. And the witness says, no, I didn't look down the barrel. You get that long form instruction. Well, it's not just the mechanism. It's whether something is a firearm is whether it shoots with gunpowder or whether it shoots with air. A pellet gun is different than a gun that shoots a bullet. They can, a gun that shoots a bullet can cause a lot more damage. And that's why there is this difference. That's why they need to prove a firearm and a pellet gun is not a firearm. And if there's a possibility that the jury could come back and say, you know, okay, here's the guy, he had a weapon, but it wasn't, um, it wasn't actually a firearm, we're not sure about this. We think it should be just a simple robbery or simple vehicular hijacking. Um, then yes, that issue should, should go to the jury. If, um, if that sort of, um, testimony you're asking about has been elicited. Mr. Arnas, do you have any more questions? Thank you very much. Thank you. We'll take the case under advisement. Thank you very much for your briefs and for your oral arguments and we stand adjourned. Thank you.